UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CARLOS MELENDEZ,

       Plaintiff,                            MEMORANDUM & ORDER

    v.                                         04-CV-2266 (NGG) (LB)

MONROE COLLEGE

       Defendant.
------------------------------------------------------------X

GARAUFIS, United States District Judge.

In this action, Carlos Melendez ("Plaintiff") brings pro se a disability discrimination and retaliation suit under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") and Section III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182 ("the ADA")[1] against Monroe College ("Monroe" or "Defendant"), alleging that Defendant discriminated against the Plaintiff on the basis of his visual impairment. The Plaintiff seeks $100 million in money damages.

At this time, the court considers Monroe's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Defendant's motion is granted and the Plaintiff's action is dismissed with prejudice.

**I.    Summary Judgment Standard**

Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party carries the burden of demonstrating the absence of a genuine issue of material fact.

---

[1] Although Plaintiff's pro se Complaint does not state which law(s) he believes to have been violated, construing his pleading in a light most favorable to pro se Plaintiff, I find that Plaintiff seeks relief under Section 504 and the ADA for failure to accommodate his disability.

See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, the court must construe the facts in the light most favorable to the non-moving party, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and all reasonable inferences and ambiguities must be resolved in favor of the non-moving party. Flanigan v. Gen. Elec. Co., 242 F.3d 78, 83 (2nd Cir. 2001). Where there are no such genuine issues of fact, and all facts, inferences, and ambiguities are construed in favor of the non-moving party, summary judgment for the moving party is appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Mack v. Otis Elevator Co., 326 F.3d 116, 119-20 (2d Cir. 2003) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). Furthermore, "[i]t is well settled that pro se litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (citing Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996)). However, "a plaintiff's pro se status does not allow him to rely on conclusory allegations or unsubstantiated speculation to overcome a motion for summary judgment." Almonte v. Florio, 02-CV-6722, 2004 U.S. Dist. LEXIS 335, at *12 n.10 (S.D.N.Y. Jan. 13, 2004).

As a predicate matter, this court must decide whether to deem admitted facts set forth by Defendant because Plaintiff has failed to oppose Defendant's motion. By order dated November 16, 2005, Magistrate Judge Lois Bloom granted Defendant's request to move for summary judgment, and instructed that "[i]f plaintiff does not oppose defendant's motion by February 6, 2006, the Court shall consider defendant's motion unopposed. Defendant's notice of motion shall contain the notice required pursuant to Local Rule 56.2. Plaintiff may obtain written

instructions on how to oppose a motion from the Court's Pro Se Office." (Order, dated Nov. 16, 2005, at 3.) By letter dated January 20, 2006, Defendant informed Plaintiff that it had filed its summary judgment motion, and enclosed all moving papers and Defendant's Local Civil Rule 56.2 Notice to Pro Se Litigant Opposing Motion for Summary Judgment ("56.2 Notice"). (Def's Ltr. to Pl., dated Jan. 20, 2006, at 1.) The 56.2 Notice instructs pro se plaintiffs opposing a summary judgment motion as follows:

> THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION by filing your own sworn affidavits or other papers as required by Rule 56(e)
> . . . .
> Any issue of fact that you wish to raise in opposition to the motion for summary judgment must be supported by affidavits or by other documentary evidence contradicting the facts asserted by the defendant. If you do not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by the defendant, the court may accept defendant's factual assertions as true. Judgment may then be entered in defendant's favor without a trial.

Eastern District of New York Local Rule 56.2.

To date, Plaintiff has not responded to Defendant's motion. Plaintiff wrote to Judge Bloom by letter received by this courthouse on February 17, 2006, alleging that Defendant "failed to deliver their SUMMARY JUDGMENT MOTION by the ordered date." (Pl. Ltr. to the Court, dated Feb. 17, 2006.) However, upon a request by Defendant to deem its motion unopposed, Judge Bloom issued an order in which she found that Defendant's submission of a Federal Express confirmation that Plaintiff received Defendant's mailing on January 23, 2006 sufficed to show that Defendant did indeed timely serve Plaintiff with its motion papers and Rule 56.2 notice, and rejected Plaintiff's representation that he did not receive the mailing. (See Order, dated Mar. 3, 2006.) Judge Bloom also found that her November 16, 2005 Order and the

56.2 Notice put Plaintiff on notice of the consequences of failing to respond to Defendant's motion, and Judge Bloom ruled the motion unopposed. (Id.)

In support of its motion, Monroe properly submitted a Rule 56.1 Statement of Facts ("Def.'s 56.1 Stmt."), as is required by the Eastern District of New York Local Rules, and several affidavits of persons with personal knowledge with exhibits of admissible evidence attached, as is required by Fed. R. Civ. P. 56(e). As stated above, the Plaintiff submitted nothing to oppose Defendant's motion.[2] I therefore adopt Judge Bloom's ruling that Plaintiff had ample opportunity to oppose Defendant's motion and notice of the consequences of an unopposed motion, and her conclusion that Defendant's motion is unopposed. Pursuant to Eastern District of New York Local Rule 56.2 ("Local Rule 56.2"), I shall deem all facts asserted in Defendant's motion 56.1 statement as true. Of course, the movant does not automatically prevail in an unopposed motion. In reviewing Defendant's motion, this court "must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co., 373 F.3d 241, 246 (2d Cir. 2004) (quoting Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993)) (internal quotation mark omitted). Furthermore, pursuant to Fed. R. Civ. P. 56 and Local Rule 56.2, I shall only credit factual assertions by Defendant that are supported by competent,

---

[2] In a summary judgment motion in a related case involving the same plaintiff, Melendez v. DeVry, 03-CV-1029 (NGG)(LB), I did not deem admitted all facts set forth by defendant, despite the fact that Melendez failed to present a statement of disputed facts. In that case, Melendez filed a document to oppose the motion that did not comply with this district's local rules, but in light of Melendez's pro se status I found his opposition sufficient to warrant this court's searching of the record to find disputed facts. Melendez v. DeVry, Slip Op., 03-CV-1029 (NGG)(LB), at 3 (E.D.N.Y. Nov. 29, 2005). In this case, the fact that Melendez has failed to file any opposition at all, despite ample opportunity and notice of the consequences of his failure to respond, compels this court to deem Defendant's stated facts admitted in the instant motion.

admissible evidence in the record. See Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999).

**II.  Facts**

In September 2002, Plaintiff, who is blind, completed an application to attend Monroe College, and was accepted to enroll at Monroe. (Def's 56.1 Stmt. ¶ 1; Affirmation of Michelle McKee Cubbon, Esq., dated Jan. 20, 2006 ("Cubbon Aff."), Ex. A; Compl. ¶ 2.)  Prior to Plaintiff's enrollment, Plaintiff met with Marie Cooper ("Cooper"), Monroe's disability coordinator, who spoke to the Commission for the Blind, a New York State Agency, and who purchased and provided Plaintiff with his requested magnetic symbols and numbers. (Id. ¶¶ 2-3.) During the Fall Semester, Cooper completed an application for Plaintiff and sent it to Recording for the Blind ("RFB"), an organization that provides books on tape for people with visual impairments. (Id. ¶ 8.) She also met with Plaintiff in the Monroe library to connect Plaintiff's laptop to the computer network. (Id. ¶ 10.) Plaintiff's professors informed him and Cooper that he was performing satisfactorily in classroom discussions. (Id. ¶¶ 6-7.)

In December 2002, Cooper arranged to meet with Plaintiff to discuss his classes for the following semester so that she could procure books on tape for him from RFB. (Id. ¶ 11.) However, Plaintiff did not keep any of these appointments. (Id. ¶¶ 11-12.) On January 9, 2003, Associate Academic Dean Carol Genese ("Genese") scheduled a meeting with Plaintiff, which was attended by Genese, Cooper, Vice President David Dimond ("Dimond"), Plaintiff, and Plaintiff's daughter. (Id. ¶ 13.) Plaintiff provided attendees with a list of eight requested accommodations:

1. School must provide, in advance, the first available date and time for

registration.

2. School must provide a list of the courses to the disabilities specialist on the day of registration.

3. The Disabilities Specialist must fax the above mentioned list to RECORDINGS FOR THE BLIND and THE COMMISSION FOR THE BLIND AND VISUALLY HANDICAPPED on the registration day.

4. The school must assign a specific person to provide aid at the LEARNING CENTER, three times a week.

5. The school must provide access to its computer network for my internet research.

6. The school must advise all of my instructors to notify, two weeks in advance, the persons at the TESTING CENTER about upcoming exams so that the TESTING CENTER can make the appropriate scheduling arrangements for the administering of my exams.

7. The school must provide the reading materials for this semester (third set of books) until RECORDINGS FOR THE BLIND returns their finished product.

(Cubbon Aff., Ex. C; see Def. 56.1 Stmt. ¶ 15.) At the meeting, Cooper said that she would contact RFB to order Plaintiff's textbooks, and Cooper explained that she had not contacted RFB sooner because Plaintiff did not keep the appointments that Cooper made for Plaintiff. (Def. 56.1 Stmt. ¶¶ 18, 20.) Dimond and Genese explained that Monroe would provide the accommodations enumerated in the letter, but that Plaintiff had to attend scheduled meetings to discuss the accommodations. (Id. ¶¶ 17, 19.)

Except for Cooper's inability to provide Plaintiff's course list to RFB on the day of registration, Monroe complied with all other accommodations sought by Plaintiff in his letter presented on January 9, 2003.[3] (Def. 56.1 Stmt. ¶¶ 17-18.)

---

[3] Defendant's 56.1 Statement states that "Monroe did provide Plaintiff with each of the accommodations included on the paper he presented at the January 9, 2003 meeting." (Def. 56.1

6

On January 9, 2003, Cooper sent letters to Plaintiff's instructors informing them that Plaintiff needed extended time for exams and that exams were to be administered in the Testing Department. (Id. ¶ 21.) She also contacted RFB and arranged to have books on tape available to him. (Id. ¶ 22.) However, Plaintiff missed the January 10, 2003 appointment and did not contact Cooper to reschedule the meeting. (Id. ¶ 23.) When Cooper ran into Plaintiff on the Monroe campus on January 14, 2003, Cooper informed Plaintiff that she assigned readers to record Plaintiff's textbooks on tape until Recording for the Blind sent the books on tape, and that she needed Plaintiff to inform the readers what chapters had to be recorded. (Id. ¶¶ 25-27.) Cooper subsequently informed Plaintiff's Commission for the Blind Counselor that funds were available to pay readers for Plaintiff pending the completion of an application form by Plaintiff. (Id. ¶ 28.) On January 15, 2003, Cooper received a telephone call from Plaintiff during an appointment with another student. (Id. ¶ 29.) Plaintiff inquired as to whether his books were being recorded. Cooper stated that Plaintiff had to arrange for an appointment with her to discuss the issue, and Plaintiff responded that he was not required to schedule an appointment. (Id. ¶¶ 29-30.) When Cooper asked Plaintiff to bring his books to be recorded, Plaintiff stated that it was unnecessary because Monroe had its own set of books. (Id. ¶ 32.) Cooper replied that his behavior was unacceptable, and that she needed further information from him to make his laptop computer accessible to the Monroe network. (Id. ¶ 34.)

Plaintiff scheduled a subsequent appointment with Cooper, which he attended, and at

---

Stmt. ¶ 16.) However, I reject this statement as only partially supported by the record, because Defendant cites to Plaintiff's deposition, in which he denied that Cooper faxed a list of Plaintiff's classes to RFB, and admitted that Defendant complied with the other requested accommodations. (See Cubbon Aff., Ex. P at 47, 49-52).

which he requested books on tape from the RFB and for his laptop to be accessible from a computer in the Learning Center. (Id. ¶ 35.) On January 22, 2003, Cooper left a message for Plaintiff to pick up several recorded textbook chapters. (Id. ¶ 36.) Plaintiff returned the call and asked Cooper to leave the tapes at the Monroe front desk with security personnel. (Id. ¶ 37.) Cooper explained to Plaintiff that funding was available to obtain readers for him at no cost to him, but Plaintiff indicated that he did not need readers. (Id. ¶ 38.)

That same week, RFB contacted Cooper and stated that some books for Plaintiff's classes were only available on tape for earlier editions. (Id. ¶ 39.) When Cooper reported this to Plaintiff, he expressed concern that the pages may differ on the different editions. (Id. ¶ 41.) In response, Cooper spoke with Plaintiff's professors and reported back to Plaintiff as to whether the different editions had different pagination, and informed Plaintiff that Monroe would continue to record Plaintiff's current textbooks and provide them on an ongoing basis. (Id. ¶ 42-43.) On January 30, 2003, Cooper sent a letter to Plaintiff enumerating her various efforts to accommodate his needs as a visually impaired person: (1) contacting Recording for the Blind for books on tape and hiring readers to tape portions of his required reading; (2) communicating with professors to ensure that books on tape provided by Recordings for the Blind correspond to the assigned reading that Plaintiff needed for his class assignments and determine what other classroom accommodations might be necessary; (3) securing an assistant at the Learning Resource Center to help with computer and other lab assignments; (4) providing a 4 track tape recorder to listen to Recording for the Blind four track recordings; (5) and arranging for personal registrations of classes with Monroe's director of student services. (Id. ¶ 44; Cubbon Aff., Ex. E at 1-2.) Plaintiff did not respond to this letter. (Def's 56.1 Stmt. ¶ 48.)

On January 31, 2003, Cooper reminded Plaintiff that the tapes were available, and they arranged for Plaintiff to pick up the tapes that day, but Plaintiff did not appear or contact Cooper, and never picked up the tapes, including those for the textbook "Labor Relations." (Id. ¶ 47.) On February 27, 2003, Cooper contacted RFB, which informed her that Plaintiff had received the complete recordings for three of the four books for the current semester, and that the fourth book, titled "Labor Relations," was in the process of being recorded.[4] (Id. ¶ 53.) Plaintiff left at least one telephone message to Dimond to complain about the lateness of his tapes for "Labor Relations."[5] (Id. ¶¶ 47-48.)

From January through March 2003, Cooper informed Dimond that on multiple occasions, Plaintiff failed to appear for scheduled appointments and failed to pick up recorded chapters of books on tape, and was belligerent to her and members of Monroe staff. (Id. ¶ 54.) Other Monroe staff members reported to Dimond that Plaintiff was belligerent to them as well. (Id. ¶ 55.) Furthermore, Plaintiff was "hostile" to and "uncooperative" with Dimond. (Id. ¶ 56.) On

---

[4] Cooper's affidavit states that the title of the fourth book is "Business Law." (See Cubbon Aff. Ex. M ¶ 32.) However, Defendant's 56.1 Statement states that the title of the book not yet recorded was "Labor Relations," and Plaintiff testified in a deposition that the title of the book that he did not receive was "Labor Relations." (See id., Ex. P. at 87.) In light of the fact that Plaintiff and Defendant both contend that the relevant title was "Labor Relations," I find that it is a fair inference under Fed. R. Civ. P. 56 that the book not yet recorded on tape for Plaintiff was "Labor Relations."

[5] I reject as unsupported Defendant's assertion that Plaintiff "does not recall ever speaking to David Dimond or Carol Genese regarding the Labor Relations tapes being provided to him late." (Def's 56.1 Stmt. ¶ 51.) In support of this fact, Defendant cites to Plaintiff's deposition, in which he testified that he left at least one telephone message to Dimond to complain about the late tapes for Labor Relations, but could not recall any specific complaint. It is not a fair inference from Plaintiff's testimony that he "does not recall" making such a complaint. Furthermore, on a Fed. R. Civ. P. 56 motion, this court is obligated to resolve ambiguities in favor of the non-movant. I therefore find that the most appropriate inference from Plaintiff's deposition testimony was that he did complain to Dimond.

9

March 28, 2003, Plaintiff met with Dimond, Cooper, and Dean of Student Services Roberta Greenberg. (Id. ¶ 57.) Dimond explained to Plaintiff that his failure to follow Cooper's instructions, and belligerent and hostile treatment of Monroe staff and Dimond violated Monroe's code of conduct, which requires students to obey administrative personnel and refrain from verbal abuse. (Id. ¶ 58.) Dimond explained that Monroe was dismissing Plaintiff for his conduct, as it has done in the past when students have violated the code of conduct; Dimond also explained that Monroe would permit Plaintiff to complete the Spring semester. (Id. ¶¶ 59-61.) Plaintiff asked for the remaining tapes, which were given to him, and he finished his semester without incident. (Id. ¶¶ 64-65.) However, he was not allowed to register for any future semesters. (Id. ¶ 65.)

Plaintiff timely filed an administrative complaint, which was denied. (Id. ¶ 60.) Plaintiff filed suit in this court on May 24, 2004, alleging in his Complaint that Monroe failed to provide him with a reasonable accommodation under the ADA because Plaintiff was not provided with books on tape. (Compl. ¶ 5.) In addition to claiming a failure to reasonably accommodate under the ADA, Plaintiff added in his deposition testimony that Monroe dismissed him in retaliation for his complaints regarding the lateness of his books on tape. (Def's 56.1 Stmt. ¶¶ 68, 70.) Plaintiff in his suit seeks $100 million in damages from Defendant for its alleged violations of the ADA. (Compl. ¶ 30.)

### III. Discussion

For the reasons explained more fully below, I find that there are no genuine issues of fact in existence, and, construing all facts, inferences, and ambiguities in favor of the plaintiff summary judgment for the Defendant is appropriate because "the record taken as a whole could

10

not lead a rational trier of fact to find for the nonmoving party." Mack v. Otis Elevator Co., 326 F.3d 116, 119-20 (2d Cir. 2003) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). Accordingly, Monroe is entitled to judgment as a matter of law.

### A. Plaintiff's Reasonable Accommodation Claim

"[T]he Rehabilitation Act and Title. . . III of the ADA prohibit discrimination against qualified disabled individuals by requiring that they receive 'reasonable accommodations' that permit them to have access to and take a meaningful part in public services and public accommodations." Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004); see also Alexander v. Choate, 469 U.S. 287, 301 (1985) (Section 504 and the ADA require that publicly funded institutions require "meaningful access" to persons with disabilities, and that "reasonable accommodations in the grantee's program or benefit may have to be made."); Dopico v. Goldschmidt, 687 F.2d 644, 653 n.6 (2d Cir. 1982) ("Where the relief requested d[oes] not modify some integral aspect of a defendant's program, courts have ruled that section 504 does require efforts to make the program available to otherwise qualified handicapped persons.").

For the purposes of Plaintiff's reasonable accommodation claim, the elements of a prima facie case for suits brought either under Section 504 and the ADA are the same.[6] Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999); see also 29 U.S.C. 794(d) (Rehabilitation Act is to be interpreted in accordance with the standards applied under the ADA). "In order for a

---

[6] Section 504 and the ADA have different standards regarding the requisite discriminatory motive. Under Section 504, the defendant must have discriminated against the plaintiff "solely" because of the plaintiff's disability, whereas under the ADA, it is enough if the plaintiff's disability was a motivating factor in the discrimination. See Parker v. Columbia Pictures Indus., 204 F.3d 326, 337 (2d Cir. 2000); Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 722 (2d Cir. 1994). In the instant case, there is no dispute regarding whether Plaintiff presents a "mixed motive" claim.

11

plaintiff to establish a prima facie violation under these Acts, she must demonstrate (1) that []he is a 'qualified individual' with a disability; (2) that the defendant [is] subject to one of the Acts; and (3) that []he was 'denied the opportunity to participate in or benefit from defendant['s] services, programs, or activities, or [was] otherwise discriminated against by defendant[], by reason of [his] disability.'" Powell, 364 F.3d at 84. It is undisputed that the Plaintiff is disabled by means of his visual impairment and that Monroe is an educational institution that receives federal funding. The issue before the court therefore is whether Monroe reasonably accommodated the Plaintiff's disability.

### *1.     The Record Establishes that Monroe Made Reasonable Accommodations*

As the Second Circuit has explained, in an accommodation claim a motion for summary judgment must be granted where a plaintiff fails to identify a facially reasonable accommodation that the defendant refused to provide, Kennedy v. Dresser Rand Co., 193 F.3d 120, 122 (2d Cir. 1999), cert. denied, 528 U.S. 1190 (2000), or when the employer offers an accommodation that is "plainly reasonable." Wernick v. Federal Reserve Bank, 91 F.3d 379, 385 (2d Cir. 1996). In the present case, Plaintiff alleges that Monroe failed to provide him with books on tape in a timely fashion. However, the Defendant has provided evidence which establishes that Monroe provided "plainly reasonable" accommodations for his need for assistance for his visual impairment. As this is an unopposed motion, it is undisputed that in response to Plaintiff's demand for books on tape, Monroe (a) hired readers to record Plaintiff's textbooks on an ongoing basis; (b) contacted professors to assure that the tapes Monroe procured for plaintiff through RFB and its own readers tracked the required reading for Plaintiff's classes; (c) provided Plaintiff with an assistant at its Learning Center; and (d) offered Plaintiff substantial access to its disability coordinator to secure

12

RFB tapes and the other above resources. Furthermore, this court deems admitted the fact that the delay in Plaintiff's receipt of the RFB "Labor Relations" book on tape did not actually lessen Plaintiff's educational access, because Monroe provided him with tapes from hired readers for all his classes on a timely and ongoing basis. Hence, Plaintiff fails to show that he was prejudiced by Defendant's failure to timely procure the book on tape. See Pell v. Trustees of Columbia Univ., 97-CV-0193, 1998 U.S. Dist. LEXIS 407, at *59-*60 (S.D.N.Y. Jan. 21, 1998) (Sotomayor, J.) (dismissing ADA accommodation claim by student plaintiff against defendant educational institution because plaintiff failed to allege that she suffered an injury related to defendant's alleged failure to accommodate).

Section 504 and the ADA do not require that the Defendant "provide every accommodation the disabled [plaintiff] may request, so long as the accommodation provided is reasonable." Fink v. New York City Dept. of Personnel, 53 F.3d 565, 567 (2d Cir. 1995) (affirming summary judgment in favor of defendant when visually disabled plaintiffs were provided reasonable accommodation of tape recording of examination, tape recorder, reader assistant and additional time to take exam). Monroe has "demonstrated without contradiction that [it] made reasonable accommodation[s]," and summary judgment is therefore proper. Id.; see also Spychalsky v. Sullivan, CV-01-0958, 2003 U.S. Dist. LEXIS 15704, *35 (E.D.N.Y. Aug. 29, 2003) (granting summary judgment in favor of defendant law school when disabled plaintiff "failed to proffer any facts that would allow a reasonable trier of fact to conclude that [defendant] failed to reasonably accommodate him . . . [when the] undisputed facts show that he was immediately granted some accommodations and ultimately granted all of the testing accommodations that he requested"). Based on the record before this court on Defendant's

13

motion for summary judgment, I conclude that no rational fact-finder could conclude that Monroe failed to reasonably accommodate the plaintiff, and as such, the Defendant is entitled to judgment as a matter of law.

### 2. *Plaintiff's Reasonable Accommodation Claim Fails Because he is not Entitled to Damages*

Assuming, arguendo, that Plaintiff were able to show that Monroe did not provide a reasonable accommodation in violation of the ADA and Section 504, Plaintiff's reasonable accommodation claim would still fail because it seeks only monetary damages. (See Compl. ¶ 30). The available remedies under Title III of the ADA are those which are available under 42 U.S.C. § 2000(a)(3)(a). See 42 U.S.C. § 12188(a)(1) ("The remedies and procedures set forth in section 2000a-3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter. . ."). Under 42 U.S.C. § 2000(a)(3)(a), damages are not available to private plaintiffs. See Newman v. Piggy Park Enter., Inc., 390 U.S. 400, 401-2 (1968). Therefore, the Plaintiff is not entitled to damages under the ADA. Spychalsky, 2003 WL 22071602 at * 5. As no relief can be granted by this court, summary judgment is proper against Plaintiff on his ADA claims.

A private plaintiff can recover monetary damages under Section 504. See 29 U.S.C. § 794a(a)(2); Bartlett v. New York State Bd. of Law Examiners, 156 F.3d 321, 331 (2d Cir. 1998), vacated on other grounds, 527 U.S. 1031 (1999); Butler v. South Glens Falls Cent. Sch. Dist., 106 F. Supp. 2d 414, 420 (N.D.N.Y. 2000). However, to succeed on a Section 504 claim for damages, the "plaintiff would need to show not only that there was a violation, but that such

violation was motivated by either discriminatory animus or ill will stemming from plaintiff's disability." Powell, 364 F.3d at 89. "The plaintiff is not required to show personal animosity or ill will. Rather, intentional discrimination may be inferred when a policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy or custom." Id. (citing Bartlett, 156 F.3d at 331) (internal quotations and citations omitted).

In the present case, the Plaintiff has failed to establish that Monroe exhibited "deliberate indifference" to the possibility that its actions might violate Plaintiff's federal disability rights. The facts demonstrate that Monroe accommodated all but one of Plaintiff's demands for accommodation, and that to the extent that Monroe secured the "Labor Relations" textbook from RFB in an untimely manner, this was not the result of "deliberate indifference," but rather Plaintiff's failure to attend appointments with Cooper. From these actions, no rational trier of fact could infer that the Defendant acted with "deliberate indifference to the strong likelihood that a violation of federally protected rights" would result. Butler, 106 F. Supp. 2d at 420.

As there can be no finding of intentional discrimination, the Plaintiff's claim for damages under Section 504 must fail and Monroe's motion for summary judgment is granted on Plaintiff's reasonable accommodation claim.

**B.      ADA Retaliation**

This court shall now proceed to discuss Plaintiff's ADA retaliation claim. Dismissal of an ADA retaliation claim is not required upon dismissal of an ADA discrimination claim because a successful discrimination claim is not a predicate for a retaliation claim. See Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); Weissman v. Dawn Joy Fashions, Inc., 214 F.3d

224, 234 (2d Cir. 2000); Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 2000).

The ADA provides that "no person shall discriminate against any individual because such individual . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "'To establish a prima facie case of retaliation under the ADA, a plaintiff must establish that (1) the [plaintiff] was engaged in an activity protected by the ADA, (2) the [defendant] was aware of that activity, (3) an [adverse action to the plaintiff] occurred, and (4) there existed a causal connection between the protected activity and the adverse . . . action.'" Weissman, 214 F.3d at 234 (quoting Sarno, 183 F.3d at 159). It is not necessary for Plaintiff's retaliation claim that his discrimination complaints alleged actual "violation[s] of the statute so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the [defendant] violated that law." Sarno, 183 F.3d at 159.

Plaintiff claims that Monroe dismissed him because he complained about Monroe's efforts to accommodate his disability. This claim must be dismissed because Plaintiff has failed to establish a causal connection between his complaints and his dismissal. It is uncontested that Plaintiff acted in a belligerent and uncooperative manner to Cooper, Dimond, and other Monroe staff. Plaintiff's dismissal pursuant to a clear conduct policy, and the absence of any evidence suggesting that his dismissal was related to previous complaints related to his disability, shows a lack of any genuine issue of fact as to whether there was a causal relationship between his complaints and his termination. See Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996); Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995).

16

Assuming that Plaintiff had made a prima facie case of retaliation, his claim still fails with respect to his alleged retaliatory dismissal because Monroe established that it dismissed him because of his belligerent and uncooperative behavior in violation of Monroe's code of conduct. See O'Connor v. College of Saint Rose, 04-CV-0318, 2005 U.S. Dist. LEXIS 26205, at *24-*25 (N.D.N.Y. Oct. 24, 2005) (granting summary judgment motion against student claiming ADA retaliation by school for failing grade in class because plaintiff failed to rebut legitimate non-retaliatory reason of plagiarism). Plaintiff has failed to put forward any evidence that might permit the inference that Monroe's stated reason for dismissal is pretextual. See Treglia v. Town of Manlius, 313 F.3d 713, 722 (2d Cir. 2002). To rebut a legitimate, non-discriminatory basis of dismissal, Plaintiff "was obliged to produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [retaliation for complaints of discrimination] was the real reason for the discharge.'" Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (quoting Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir. 1994)) (alteration supplied). As Defendant's motion is unopposed, and Plaintiff has not provided this court with any competent, admissible evidence that Defendant's purported reason for dismissal was pretextual, Plaintiff's ADA retaliation claim must be dismissed.

## IV. Conclusion

For the reasons stated above, Monroe's motion for summary judgment is GRANTED. The Plaintiff's claim seeking money damages on the grounds of disability discrimination and retaliation is dismissed with prejudice. The clerk is directed to close the case.

SO ORDERED.

Dated: October __, 2006  /s/
      Brooklyn, N.Y. NICHOLAS S. GARAUFIS
United States District Judge